UNITED STATES DISTICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| NILEA SPURAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:19-CV-00149-HAB |
| ) | |
| OFFICER EDWARD BLACK, ) | |
| CITY OF FORT WAYNE and ) | |
| FORT WAYNE COMMUNITY SCHOOLS ) | |
| WORKFORCE DEVELOPMENT ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Caught in the midst of a fracas between Plaintiff, Nilea Spural ("Spural"), and another girl in the school lunchroom, Officer Edward Black intervened to quell the melee. His intervention did not go quite as planned; Spural was uncooperative in Officer Black's attempts to restrain her from "whipping the a--" of the other combatant and they both tumbled to the ground. Spural believes Officer Black used excessive force and battered her, and further believes the school failed to properly supervise the lunchroom. She filed suit against Officer Black, the City of Fort Wayne ("the City") and Fort Wayne Community Schools ("FWCS") asserting claims under 42 U.S.C. § 1983 as well as a variety of state law claims. Before the Court are two Motions for Summary Judgment, one from FWCS (ECF No. 28), and one from the City and Officer Black (ECF No. 31). With no timely responses having been filed, the Defendants' Motions for Summary Judgment are now ripe for determination.

## FACTUAL BACKGROUND[1]

---

[1] FWCS submitted a statement of material facts with respect to the administration and staff supervision in the cafeteria at the time of the incident. However, because the Court declines to exercise supplemental jurisdiction over Spural's state claim for negligent supervision, those facts have been omitted here.

At the time of these events, Spural was enrolled as a sophomore at Northrop High School, a high school within FWCS. (Dep. of Nilea Spural at 11, ECF Nos. 28-2 and 32-1). Officer Black is a police officer dually employed by the City and FWCS. (Affidavit of Officer Edward Black ¶¶ 4, ECF Nos. 28-4 and 32-2). He is a security officer for FWCS, stationed at Northrop High School and was on duty at the school during the events in this lawsuit. (*Id.*)

### A. The Brawl

On May 4, 2017, Spural was in the cafeteria at Northrop High School during her designated lunch period. (Spural Dep. at 40). Spural and her friend sat down at a corner table located near the entrance of the cafeteria. (*Id.* at 44). Another group of students approached their table and one student ("E.R.") told Spural to "[g]et up. My friends are about to sit here." (*Id.* at 35, 44). Spural responded that she was not going to cede her seat. (*Id.* at 45). E.R., undeterred by that refusal, then "snatched" Spural's hair, pulled her out of the seat, and struck her repeatedly with her fists. (*Id.* at 45, 51). In retaliation, Spural kicked and struck E.R. with her fists. (*Id.* at 55). Spural testified she was trying to strike E.R. in her face but was only able to strike her about the side of her head. (*Id.* at 55). She further admitted trying to hit E.R. as hard as she possibly could. (*Id.*)

While this rumpus was underway, Officer Black was in the main hallway near the cafeteria. He observed a large crowd of students moving quickly toward the cafeteria. (Black Aff. ¶ 6). Shortly thereafter, Officer Black heard an announcement via his hand-held radio that there was a fight in the cafeteria. (*Id.*). He then followed school administrator, Brad Ratliff ("Ratliff"), into the cafeteria where he observed Spural in the above altercation with E.R. (*Id.* ¶ 7). By this time, students had congregated around the fighting students. Officer Black and Ratliff climbed over a cafeteria table to intervene between the girls. (*Id.* ¶ 8). Office Black observed Spural screaming while actively advancing toward E.R. (*Id.* ¶ 7). To stop her forward progress toward E.R., he

2

approached Spural from behind and placed his right arm behind her neck and over the top of her right shoulder and grabbed her left shoulder with his left hand. (*Id.* ¶ 8).

Spural resisted Officer Black's efforts to restrain her and continued to yell and advance toward E.R. (Black Aff. ¶ 9). She testified as follows:

> Q: You were just trying to get to [E.R.]?
> A: Uh-huh, yes.
> Q: Because you wanted to strike back after she had struck you?
> A: Yes.
> Q: You were angry?
> A: Very.
> Q: As I understand it, you were saying words to the effect of "I'm going to whip her ass" or something like that?
> A: Yes.
> Q: And that was when this contact with Officer Black was going on?
> A: Yes.

Spural Dep. at 58–59). At that point, Officer Black pulled Spural away from E.R.'s direction. (Black Aff. ¶ 9). Spural lost her balance and fell backwards, causing both herself and Officer Black to fall to the ground. (*Id.*).

For her part, Spural sees the encounter with Officer Black differently. She testified that Officer Black "slammed" her to the floor on the left side of her body and had his arm around her neck as she was on the floor. (Spural Dep. at 57: "He slammed me down to the floor."; *id.* at 59: "I sat there on the floor barely can't [sic] breathe while Officer Black had his arm around my neck."). She testified that her left leg made contact with the floor, but her head never hit the floor. (*Id.* at 68). She further claims that as she fell, she hit the right side of her head on a chair. (*Id.*). As for her inability to breathe, she indicated that she was out of breath because she was frustrated, not because of Officer Black's actions. (*Id.* at 92: "If you just got hit upside your head, wouldn't you be frustrated too but could barely breathe?"). Spural estimated she was on the floor between two seconds and two minutes before standing and being escorted to the clinic. (*Id.* at 60). She walked

3

to the clinic without assistance but noted that she was limping on her left side and was still out of breath. (*Id.* at 63, 92).

Officer Black specifically refutes Spural's statements regarding his use of force indicating that "[a]t no time did I slam [Spural] to the ground, nor did I restrain [Spural] around her neck." (Black Aff. ¶ 11).

This entire encounter between Spural and Officer Black was captured on videos and submitted to the Court. (ECF Nos. 30, 33).[2]  In the videos, the two girls can be seen punching and kicking each other. Officer Black approaches Spural from behind and places his arm around her as he described in his affidavit. The videos also show Officer Black physically pulling Spural backwards from the direction of E.R. and the two falling to the ground. It appears, but is not altogether clear, that at the time Officer Black pulled Spural, her leg is airborne, perhaps on a chair, and that Spural loses her balance and falls into Officer Black. It also appears that Officer Black's arm was behind Spural's neck and protected her head from hitting the floor. Spural agrees that the videos accurately captured what happened and the physical contact between herself and Officer Black. (Spural Dep. at 58).

**B. Spural's Post-Melee Medical Treatment**

At the time of the fight, Spural was wearing a heart monitor related to a pre-existing medical condition. (Spural Dep. at 28, 30, 63). Spural informed the school nurse of the heart monitor and reported that her heart was racing, and she could not breathe. School officials called an ambulance due to these concerns. (*Id.* at 92). Spural was then transported to the hospital where she then reported that she was hit multiple times in the face, left upper arm and right upper leg.

---

[2] The Court received three videos. In her deposition, Spural indicates a fourth video existed but she deleted it in January 2019. (Spural Dep. at 47–48).

4

(*Id.* at 53; ECF No. 32-1, p. 41 – Spural's hospital medical record). Spural was diagnosed with a slight fracture on the right side of her nose but did not receive treatment for her nose. (Spural Dep. at 67). When asked about her injuries, Spural said, "[m]y nose and I had a busted lip, and I could not walk on my left side." (*Id.* at 63). There is no indication that Spural had any recorded problems with her heart monitor from this incident. She testified that she was out of breath after the fight because she was angry and frustrated. (*Id.* at 92).

### C. The Use of Force Policy

The City maintains a Use of Force Policy for its police officers employed with the Fort Wayne Police Department. (Affidavit of Captain Shane Lee ¶ 3, ECF No. 32-3). The Use of Force Policy outlines the measures to be taken by police officers to protect themselves and the public welfare. (*Id.*). The policy further provides that police officers shall use only that force which appears reasonably necessary to effectively bring an incident under control, while protecting the lives of the officers or others. (Lee Aff. ¶ 5, see also ECF No. 32-3 Exh. 1, at 1). Officer Black averred that he read and understood the City's Use of Force Policy and that he reviewed the policy as part of his regular training with the Fort Wayne Police. (Black Aff. ¶ 3).

## APPLICABLE STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific

facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.' " *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v.Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

That a motion for summary judgment is unopposed doesn't change the summary judgment standard, and the court still conducts "more than just a cursory review of the filings" and scrutinizes the movant's factual submissions in order to "determine that the motion is sound and within the parameters of the law." *Leal v. TSA Stores, Inc.*, No. 2:13 CV 318, 2014 WL 7272751 at *1 (N.D. Ind. Dec. 17, 2014). An unopposed motion does, however, "reduce the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"); *Brasic v. Heinemanns, Inc.*, 121 F.3d 281, 285-286 (7th Cir. 1997) (affirming grant of summary

judgment where the nonmovant failed to properly offer evidence disputing the movant's version of the facts). Mindful of these standards, the Court turns now to the facts of the case.

## DISCUSSION

Spural asserts two distinct sets of claims under 42 U.S.C. § 1983. As to the City and FWCS, she asserts that they can be held liable in their official capacities for the tortious acts of their employee, namely Officer Black, under the concept of *respondeat superior*. Additionally, Spural makes an individual capacity claim against Officer Black asserting that he subjected her to excessive force in violation of her federally protected right to be free from unreasonable seizure under the Fourth Amendment. Spural also makes a host of state law claims including claims of battery against all parties and negligent supervision as to FWCS.

### A. Official Capacity Claims against the City and FWCS

This Court need not expend significant energy on Spural's claims against the City or FWCS as summary judgment is clearly appropriate on the official capacity claims against them. Looking first to the claims against the City, this Court finds a host of problems with Spural's claim.

First, the City is a separate and distinct entity from the Fort Wayne Community School Corporation and has no control over the affairs of the school corporation. Ind. Code 20-23-4-3 (defining a community school corporation); 20-26-3-1 (establishing the policy of the state "to grant each school corporation all the powers needed for the effective operation of the school corporation"); 20-26-2-2 (defining the "governing body" of a school corporation, which does not include the City). Furthermore, there has been no evidence of any contractual relationship, written or implied, between the City, the Fort Wayne Police Department, and FWCS regarding school security operations.

7

Second, Officer Black was acting as an employee of FWCS and not the Fort Wayne Police Department at the time of this incident. In Indiana, "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business." *Stropes v. Heritage House Childrens Ctr. of Shelbyville*, Inc., 547 N.E.2d 244, 247 (Ind. 1989). "It is common for local police officers to be hired to work as school security officers and, in these circumstances, there is a distinction to be drawn between their roles as police officers and school security officers." *Grimes v. Gary Community School Corporation,* No. 2:13-CV-36-PPS-APR, 2016 WL 1162370, at *5 (N.D. Ind. Mar. 23, 2016) (citing *K.W. v. State*, 984 N.E.2d 610, 613 (Ind. 2013). On the day of May 4, 2017, Officer Black was working at Northrop High School in his role as a school security officer and was an employee of FWCS, not the City.

Third, recovery against a governmental unit or entity cannot be based on *respondeat superior* for purposes of § 1983 and Spural must establish the City's liability via *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978). To do so, she must demonstrate a policy of practice by the City of failing to train officers in the proper use of force or a deliberate indifference to a widespread use of excessive force. *Id.* There is no evidence that the City's police officer training was inadequate in any way. Notably, Spural did not respond to the summary judgment motions and thus, has conceded her view that that the City failed to provide necessary training to prevent the alleged Constitutional violation alleged in this case –the use of excessive force. Indeed, the only evidence is to the contrary. Officer Black averred that the City's Use of Force policy, which he read, understood, and received training on, provides that police officers shall use only that force which appears reasonably necessary to effectively bring an incident under control, while protecting the lives of the officers of others. Thus, the Court finds no basis for the liability against the City.

The same is true for the official capacity claims against FWCS. As was the case with the City, Spural has offered no evidence that police officer training was inadequate in any way. Furthermore, for FWCS to be on the hook for Officer Black's alleged excessive force, Spural must provide evidence that there was a custom or practice of this type of behavior within the FWCS. "[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citations and quotations omitted); *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") Spural has provided no evidence that there was a policy or custom within FWCS to use excessive force when engaging with fighting students. And, for this reason, FWCS cannot be held liable.³

### B. Individual Capacity Claim against Officer Black

This leaves remaining Spural's individual claim against Officer Black asserting the excessive use of force in breaking up the lunchroom brouhaha. A claim that a police officer has used excessive force in the course of a "seizure" of a citizen is addressed to the reasonableness of the seizure under the standards established by the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005). The

---

³ Additionally, there can be no liability against the City or FWCS without an underlying constitutional violation. Thus, given this Court's conclusion that Officer Black's conduct does not violate the Fourth Amendment, the substantive claim against both entities fails. *See Windle v. City of Marion,* 321 F.3d 658, 663 (7th Cir.2003) (individual officers must be liable on underlying substantive claim for municipal liability to attach under either failure to train or failure to implement theory). !

reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). That assessment must include a recognition that officers are often forced to make split second judgments in tense, uncertain, and rapidly evolving situations, as to the amount of force necessary in a particular situation. *Id.* at 396–97. Because the inquiry is an objective one, which examines whether the officer's actions are objectively reasonable in light of the totality of the facts and circumstances confronting him or her, the officer's subjective intent or motivations are not a consideration. *Id.* at 397; *Miller v. Gonzalez*, 761 F.3d 822, 828–29 (7th Cir. 2014). Use of force by a police officer is objectively unreasonable and excessive if, judging from the totality of the circumstances existing at the time, the officer uses greater force than is necessary for the purpose. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012).

Based on the undisputed facts and confirmed by the video evidence, the Court has little trouble concluding that Officer Black's mild restraint of Spural falls within the standard of objective reasonableness under the totality of the circumstances. Officer Black encountered a chaotic scenario where two girls were engaged in a fierce free for all – even Spural testified that E.R. was hitting her with fists and kicking her and that she was responding in kind hoping to "whip [E.R.'s] ass." (Spural Dep. at 58-59). The video accurately depicts that this was more than a mere tussle; the girls were engaged in a full out exchange of blows creating a dangerous situation to themselves and the surrounding students.

Arriving on the scene, Officer Black had to climb over a table and past a crowd of students to engage with Spural. From there, he approached Spural from behind, placed his right arm behind Spural's neck and over the top of her right shoulder and grabbed her clothing on her left shoulder

10

with his left hand. Spural was actively resisting and, in her own words, she was "trying to get at [E.R.]" and Officer Black pulled her backwards. Although the two fell to the ground, the video evidence, which Spural concedes is an accurate depiction of her encounter with Officer Black, belies Spural's assertions that she was "slammed to the ground" or that Officer Black's use of force was excessive. Having reviewed the video evidence, the Court is convinced that no reasonable jury could find for Spural given her encounter with Officer Black depicted in the video; therefore, the Court will not accept her version of the events or that Officer Black "slammed" her to the ground for purposes of summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *see also Williams v. Brooks*, 809 F.3d 936 942 (7th Cir. 2016)("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape."); *Brooks v. City of Elmhurst*, No. 18-CV-1593, 2019 WL 5395269, at *6 (N.D. Ill. Oct. 18, 2019)("The video evidence contradicts Plaintiff's account; therefore, the Court will not accept his version of what transpired for purposes of summary judgment.").

Other than her claim that Officer Black slammed her to the ground, Spural has made no additional allegations of any substance that the force used was improper, let alone excessive. Thus, absent any other evidence from Spural as to the force used by Officer Black, the Court concludes as a matter of law that the minimal force used by Officer Black to pull Spural away from E.R. was objectively reasonable. Officer Black is entitled to summary judgment.[4]

---

[4] That said, even if the Court concluded otherwise as to the objective reasonableness of Officer Black's conduct, he would still be entitled to summary judgment on the issue of qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not

11

C. **<u>Supplemental State Law Claims</u>**

For the reasons stated above, the Court grants Defendants' summary judgment motions as to the claims under 42 U.S.C. § 1983. Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claims for battery and negligent supervision and rule on Defendants' motions for summary judgment.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co*., 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos*., 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered

---

violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Qualified immunity is intended to strike a balance between "protect[ing] a government official's ability to function without the threat of distraction and liability" and "afford[ing] members of the public the ability to vindicate constitutional violations by government officials who abuse their offices." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (internal quotation marks and citations omitted). In his brief, Officer Black raised the defense of qualified immunity, and thus, it is Spural's burden to defeat it. *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017); *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008). As noted, she did not respond to the Motions for Summary Judgment and the cases cited by Officer Black in support of his contention that he did not violate clearly established law are all well-taken.

under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are instances in which "a district court should exercise supplemental jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. However, "[i]f the question whether a state-law

claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. This is a close call. The Court believes that Plaintiff's claims are likely without merit, but it ultimately concludes that it cannot say with certainty that they are patently frivolous. While Plaintiff's state court claims arise out of the same facts as her now-defunct federal claims, they are nonetheless subject to distinct legal analysis. The Court may very well be delaying the inevitable but nonetheless concludes that relinquishment of jurisdiction is appropriate.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, the Court denies Defendants' motions for summary judgment on the state law claims without prejudice and dismisses the state law claims with leave to refile in state court.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions for Summary Judgment (ECF Nos. 28, 31) are GRANTED in part and DENIED in part. Judgment is hereby entered in favor of all Defendants on the claims arising under 42 U.S.C. § 1983 in Plaintiff's Complaint. Defendants' Motions are denied as to Plaintiff's state law claims; those claims are dismissed without prejudice to refiling in state court.

So ORDERED on July 21, 2020

s/ Holly A. Brady<br>
JUDGE HOLLY A. BRADY